IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

| | | |
|---|---|---|
| SARUNAS PLETKUS, Acting on behalf of infant child, M.P. | ) ) ) ) | Civil Case No. |
| Petitioner, | ) ) | |
| and | ) ) | |
| ANA SALETIS, | ) ) | |
| Respondent. | ) ) ) | |

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Petitioner, SARUNAS PLETKUS, urgently needs emergency equitable relief to prevent Respondent, ANA SALETIS, from further interference with Petitioner's rights of custody over their minor child, who was, without Petitioner's acquiescence or consent, wrongfully retained from the Republic of Lithuania by Respondent, as set forth in Petitioner's Verified Petition for the Return of Minor Children to Lithuania (the "Verified Petition")(a copy of the Verified Petition is attached hereto as Exhibit "A"). Respondent has wrongfully retained the Child from their place of habitual residence in Lithuania, in

violation of the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"). Oct. 25, 1980, T.I.A.S. No.11,670 at 1, 22514 U.N.T.S. at 98 (a copy of the Hague Convention is attached as Exhibit "B"). Petitioner is entitled to relief in the form of an order for the Child to return to the Republic of Lithuania under Articles 8 (providing a right of action to a person exercising rights of custody) and 12 (providing for the return of the child as a remedy) of the Hague Convention, as well as under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§9001-9010. Emergency relief is authorized under 22 U.S.C. §9004(a), which provides that a court may take appropriate measures "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition. " (Emphasis added.) As discussed below, emergency relief is appropriate here.

## FACTS

Petitioner and Respondent were married and are the parents of .  . who is currently  years old. The Hague Convention applies to children under sixteen years of age, and thus, applies to this Child. The parties and the child have resided in the Republic of Lithuania since prior to the child's birth. The Petitioner has resided in the Republic of Lithuania his whole life and remains there. The Respondent moved to the United States with the minor child, without

permission of the Petitioner in July of 2026. The Petitioner and the minor child are citizens of the Republic of Lithuania. The Respondent recently lost her Lithuanian citizenship and is a citizen of the United Staes.

There is an ongoing case regarding the minor child in the Republic of Lithuania. The parties stipulated to parenting time of the Child. The ongoing case resulted in a Parenting Order setting forth the parenting time schedule and communications protocol for the parents and the Child. It also placed restrictions on travel outside the European Union without the consent of the non-traveling parent. Most relevant to the instant matter, Paragraph 2.7 of the Parenting Order provides that, prior to the Child's beginning school, neither parent may travel on holiday with the Child. Even after she begins school, the Parenting Order provides for strict notification and consent requirements. "If a trip to the United States of America is planned, and if such a trip lasts longer than the scheduled period of the uninterrupted holidays (i.e. will exceed a 2-week period), it is obligatory to obtain a written consent from the parent who is not traveling." Exhibit "E" at 4. Even for shorter trips when the consent of the other parent would not be required, the Parenting order requires the parents to "notify each other in order to coordinate the time of the respective holidays no later than 1 calendar month before the planned date of the trip, indicating the purpose of the

trip, contact details, time of departure and arrival and other necessary circumstances[.]"

On March 18, 2025, Respondent asked Father to grant permission for her to take the child to the United States, ostensibly to visit family and friends. Father declined to give his permission because he feared Respondent may not return the child once she was in the United States. Respondent made no other requests, and Father continued his attempts to see the Child when he could. The last time Father spent time with the Child was on June 26, 2025.

The Child attends a kindergarten in Lithuania, which is similar to a preschool in the United States. The kindergarten has an app that allows parents to check in on their children in real time to ensure they are in attendance. The following Tuesday, July 1, 2025, Father logged onto the app in advance of his upcoming parenting time that day to ensure the Child was present at kindergarten. The app showed the Child was not present. Father contacted the school, who informed him that the Child had not checked in since June 27, 2025. Father eventually discovered that Respondent had unlawfully removed the child from Lithuania and had taken her to the United States.

## PURPOSES AND PERTINENT PROVISIONS OF THE HAGUE CONVENTION

The United States became a "Contracting State" to the Hague Convention on July 1, 1988. The Hague Convention is implemented in the United States by ICARA. The Convention is a reciprocal treaty, in that it is only effective between contracting states. The Convention is to be given uniform international interpretation. 22 U.S.C. § 9001. The opinion of sister signatories to the Convention are entitled to significant weight. *Air France v. Saks*, 470 U.S. 392, 404 (1985). "Treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Chocotaw Nation of Indians v. United States*, 318 U.S. 423, 431-432 (1943); *Air France v. Saks*, 470 U.S. 392, 396 (1985).

Article 1 of the Convention states that the Convention's goals are:

> (a) to secure the prompt return of children wrongfully removed to or retained in
>
> any contracting State; and
>
> (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Article 3 of the Convention provides, in pertinent part, that:

The removal or the retention of a child is to be considered wrongful where-

> (a) it is in breach of rights of custody of a person... under the law of
the
> State in which the child was habitually resident immediately before
> the removal or retention; and
> (b) at the time of removal or retention those -rights were actually
> exercised, either jointly or alone, or would have been so exercised
> but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Article 4 of the Convention provides that the Convention "shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights."

Article 5(a) of the Convention provides that, within the meaning of the Convention, "rights of custody shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."

Article 12 of the Convention provides, in pertinent part:

Where a child has been wrongfully removed or retained in terms of Article 3, and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith

In Article 14 The Convention also dictates that "In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable,"

Petitioner's rights of custody by operation of the law of the Republic of Lithuania are specifically addressed in the Verified Petition. In this case the removal/retention of the Child is wrongful under Article 3 of the Convention since it is in breach of the Petitioner's right of custody under the laws of the Republic of Lithuania, the habitual residence of the Child. Petitioner was actually

exercising these rights and would still be exercising those rights but for the wrongful removal/retention.

In the primary source of interpretation for the Convention, the Explanatory Report, Professor E. Perez-Vera noted that any exceptions to the return of the child to his habitual residence "are to be interpreted in a restrictive fashion if the Convention is not to become a dead letter. In fact, the Convention as a whole rests upon the unanimous rejection of this phenomenon of illegal child removals and upon the conviction that the best way to combat them at an international level is to refuse to grant them legal recognition. The practical application of this principle requires that the signatory States be convinced that they belong, despite their differences, to the same legal community within which the authorities of each State acknowledge that the authorities of one of them — those of the child's habitual residence — are in principle best placed to decide upon questions of custody and access. As a result, a systematic invocation of the said exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration." [1]

---

[1] Elisa Perez-Vera, Explanatory Report: Hague Conference on Private International Law, in 3 Acts and Documents of the Fourteenth Session ("Explanatory Report"), 35 at 22-23

## ARGUMENT

**A. Petitioner Is Entitled to Emergency Relief.**

Federal courts are empowered to grant temporary restraining orders and preliminary injunctions. *See* Fed. R. Civ. P. 65. Consistent with Federal Rule 65 and the exigent circumstances that typically exist in Hague Convention cases, Article 2 of the Hague Convention provides: "Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose, they shall use the most expeditious procedures available." October 25, 1980, T.I.A.S. No, 11,670 at 1, 22514 U.N.T.S. at 98, The "objects" of the Hague Convention are expressed in Article 1: the prompt return of an abducted child and the protection of the rights of custody. Exhibit A to Verified Complaint, Article 1. Federal Rule 65 allows this Court to expeditiously promote the Hague Convention's objectives by emergency equitable relief.

Rule 65(b) further provides that "The Court may issue a temporary restraining Order without written or oral notice to the adverse party only if (A) specific facts in an affidavit or a verified compliant clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party van be heard in opposition; and (B) the movant's attorney certifies

in writing any efforts made to give notice and the reasons why it should not be required" FED. R. CIV. P. 65.

The decision to grant or deny an injunction is "within the sound discretion of the district court." *Int'l Cosmetics Exch., Inc. v. Gapardis Health Ck Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002). "A preliminary injunction may be issued to protect the moving party from irreparable injury and to preserve the power of the trial court to render a meaningful decision on the merits." *Compact Van Equip. Co., Inc. v. Leggett ck Platt, Inc.*, 566 F.2d 952, 954 (5th Cir.1978). The Court's task on an application for a preliminary injunction is to find: "(1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if it is issued, would not be adverse to the public interest." *Id.* As explained below, all of the elements for the emergency equitable relief requested herein, including injunctive relief, are satisfied in this case.

**B. There Is a Substantial Likelihood that Petitioner Will Ultimately Prevail on the Merits.**

According to the Hague Convention, the removal or retention of a child is wrongful where the removal is in breach of established custody rights defined by

the law of the country in which the child was habitually resident immediately before the removal or retention, and where, at the time of removal, these custodial rights were exercised (either jointly or alone) or would have been so exercised but for the removal. Art. 3, October 25, 1980, T,I.A.S. No. 11,670 at I, 22514 U.N.T.S. at 98. By virtue of Lithuanian Law, the country of the Child's habitual residence Petitioner has custodial rights to the Child. Verified Petition ¶ 27-29. Additionally, Petitioner exercised his custodial rights until the wrongful removal/retention. Consequently, Petitioner is likely to prevail on the merits of his petition for the return of the Child.

1. **The Child was a habitual resident of Lithuania before their abduction/wrongful retention.**

The legal definition of "habitual residence" is well-established. In *Pesin v. Rodriguez,* for example, the district court held: "Courts in both the United States and foreign jurisdictions have defined habitual residence as the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective." 77 F. Supp. 2d 1277, 1284 (S.D. Fla. 1999) (citing *Feder v. Evans- Feder,* 63 F,3d 217, 224 (3d Cir.1995), and *Friedrich v. Friedrich,* 983 F.2d 1396, 1401-03 (6th Cir.1993)), aff'd, 244 F,3d 1250 (11th Cir, 2001). The child was born in the Lithuania and resided her entire life there until the wrongful

removal/retention. The parties and the Child were under an order from Lithuania restricting the Child to not travel to the United States. (A copy of the attached hereto as Exhibit "D")

**2. Petitioner was exercising his rights of custody at the time of the Child's wrongful removal.**

By virtue of Lithuanian law, the law of the Child's habitual residence, Petitioner exercised his custodial rights over the Child at the time of the wrongful removal/retention. As the Verified Petition establishes, there was an Order in Lithuania directing that the Child have visitation with the Petitioner. The Petitioner was constantly exercising his custody rights prior to the wrongful removal/retention.

**3. Granting Petitioner's Hague Petition Will Not Terminate Any Right of Custody of Respondent.**

As shown supra, Petitioner is very likely to succeed on the merits of his Hague Convention claim. It should be noted, moreover, that all Petitioner seeks is the Child's return to Lithuania, her habitual residence, and not make change detrimental to Respondent's own rights of custody, should she still retain any such rights.

The Hague Convention authorizes a federal district court to determine the merits of a claim for wrongful removal or retention of a child. The Hague

Convention does not, however, allow the district court to consider the merits of any underlying custody dispute. *In re: Morris*, 55 F. Supp. 2d 1156, 1160 (D. Colo, 1999) (recognizing that "(pursuant to Article 19 of the Convention, (this Court has] no power to pass on the merits of custody").

Stated another way, a district court only has jurisdiction to decide the merits of the wrongful removal/retention claim, as the Hague Convention is intended to restore the pre-abduction status quo and deter parents from crossing borders in search of more sympathetic courts. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (citations omitted); *Barrios Gil v. DelValle Matheus Rodriguez*, 184 F. Supp. 2d 1221, 1224 (M.D. Fla. 2002) (Emphasis added).

**C. Petitioner will suffer irreparable injury unless equitable relief is granted.**

Given that Respondent has already wrongfully removed the Child to the United States and impeded Petitioner's relationship with her, there is obviously a risk that Respondent will further hide the Child and herself when she learns that Petitioner is seeking the return of the Child to the Republic of Lithuania through the United States court system. If Respondent flees with Petitioner's Child again, it may be difficult, if not impossible, to locate them. Petitioner could suffer irreparable injury if the requested relief is not granted, and, under these circumstances, emergency equitable relief is authorized under the Hague Convention.

ICARA directly speaks to such a remedy. 22 U.S.C. §9004(a) provides that a court may take appropriate measures "to protect the well-being of the child involved *or to prevent the child's further removal or concealment before the final disposition of the petition.*" (Emphasis added).

**D. The threatened injury to Petitioner outweighs any damage an injunction may cause Respondent.**

The potential of Petitioner once again losing the Child outweighs any perceived injury to Respondent. Petitioner merely seeks the restoration of the status quo: the return of the Child to the habitual residence.

In *Furnes*, the Eleventh Circuit emphasized the importance of re-establishing the status quo before the alleged wrongful removal: "A return order effectively maintains the status quo with regard to custody of the child... A return order will not effect a change in custody...because she [Respondent] is free to accompany her child back...and retain custody... The specific purpose of the Hague Convention was to deter and amend the exact type of abduction in this case, not to bless it." *Furnes v. Reeves*, 362 F.3d 702,717 (11th Cir. 2004) (holding the father had custody rights of the child, and therefore remanded the petition to the trial court in order for it to be granted).

Here, Petitioner is not seeking a custody order from this Court. Rather, he seeks the status quo prior to the wrongful abduction/retention: the ability to

exercise his rights of custody in Lithuania; the Child's habitual residence. Any custody issues will be determined by a court in Lithuania.

**K. An injunction, if issued, would not be adverse to the public interest.**

The relief Petitioner seeks is authorized under the Hague Convention, an international treaty ratified as between the Republic of Lithuania, the United States, and other contracting states. There can be no public interest objection raised to the relief sought by Petitioner. The only relevant considerations are whether Petitioner satisfies the requirements of the Hague Convention and the requirements under the Federal Rules of Civil Procedure for the issuance of emergency equitable relief. Those requirements are satisfied here.

## RESPONDENT SHOULD BE ORDERED TO PAY THE COSTS INCURRED BY PETITIONER IN CONNECTION WITH THIS ACTION

Article 26 of the Convention provides that:

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or

payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

ICARA 22 U.S.C. §9007(b)(3) provides that:

Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

As shown above, Respondent's conduct in violation of Petitioner's rights of custody has been flagrant and willful. Accordingly, it is appropriate that an order by this Court at the end of this action directing the return of the Child to Lithuania be accompanied by an order directing Respondent to pay Petitioner's costs incurred in connection with this action, in an amount to be determined, upon a showing by Petitioner.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Petitioner asks this Court to grant the following relief:

(a) An immediate temporary restraining order prohibiting the removal of the Child from the jurisdiction of this Court pending a hearing on the merits of the Verified Petition, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Child from the jurisdiction of this Court pending a determination on the merits of this Petition; and

(b) Scheduling an expedited preliminary injunction hearing on the merits of the Verified Petition and ordering that Respondent show cause at this hearing why the child should not be returned to the Republic of Lithuania, and why such other relief requested in the Verified Petition should not be granted.

Respectfully submitted, this 16 day of April, 2026.

PHILIP J. SCHIPANI, B.C.S.
Fla. Bar. No. 557528
Schipani Law Group, P.A.
1605 Main Street, Suite 1110
Sarasota, Florida 34236
(941) 366-8333
(941) 366-7331 (fax)
service@manasotalawyer.com
Counsel for Petitioner