UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SARUNAS PLETKUS, acting on behalf of minor child, E.P.,

Petitioner,

v. Case No.: 2:26-cv-1209-SPC-NPM

ANA SALETIS,

Respondent.

---

# OPINION AND ORDER

On August 7, 2026, the Court ordered Respondent Ana Saletis to surrender custody of E.P., her and Petitioner Sarunas Pletkus' minor child, to Petitioner or his designee for return to Lithuania by August 17, 2026. *Pletkus v. Saletis*, No. 2:26-CV-1209-SPC-NPM, 2026 WL 2274154 (M.D. Fla. Aug. 7, 2026); (Doc. 42). Now before the Court is Respondent's Second Amended Emergency Motion to Stay Order of Return Pending Appeal, or for Temporary Administrative Stay. (Doc. 51). Petitioner responded in opposition. (Doc. 52).

The Court incorporates by reference the comprehensive factual findings from its order. *Pletkus*, 2026 WL 2274154, at *2–7. For the following reasons, the motion is denied.

## Legal Standard

In Hague Convention cases, "[c]ourts should apply the four traditional

stay factors in considering whether to stay a return order: (1) whether the stay applicant has made a strong showing that [s]he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Chafin v. Chafin*, 568 U.S. 165, 179 (2013) (internal citations and quotations omitted). Importantly, a child's return to their country of habitual residence does not render moot motions for reconsideration or appeals. *Id.* at 178 (noting that routine stays due to mootness "would conflict with the [Hague] Convention's mandate of prompt return to a child's country of habitual residence" and "could also increase the number of appeals"). The moving party bears the burden to show entitlement to a stay. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). "Staying the return of a child in an action under the Convention should hardly be a matter of course." *Friedrich v. Friedrich*, 78 F.3d 1060, 1063 n.1 (6th Cir. 1996); *Chafin*, 568 U.S. at 179 (describing a stay pending appeal "as a scenario that would undermine the goal of prompt return and the best interests of children who should in fact be returned").

**Analysis**

The Court addresses the four *Chafin* factors to determine whether to stay its order pending appeal.

*Likelihood of Success*

The gist of Respondent's argument is that the Court assigned improper weight to historical evidence of whether Petitioner sexually abused the child. In other words, Respondent contends that the Court made proof of past sexual abuse dispositive of the prospective grave-risk inquiry. Not so. The Court was *well-aware* of the Eleventh Circuit's parameters. *Pletkus*, 2026 WL 2274154, at *8 n.4 (noting the *Gomez* standard). But understanding the entire record was vital to the Court's assessment of the risk to the child if returned to Lithuania. Having heard the testimony at the final evidentiary hearing and reviewed the extensive record, it became abundantly clear to the Court that Dr. Borelli's opinion is built on a house of cards. The Court analyzed this matter in detail and need not reiterate it here.

For support, Respondent now emphasizes that no competing psychologist testified, no competing trauma assessment was presented, no expert contradicted Dr. Borelli's personal observations, and no expert testified that return would be psychologically safe. (Doc. 51 at 6). Although Petitioner did not offer an expert opinion to rebut Dr. Borelli's opinions, that does not mean they went unrefuted. As the Court described, ample evidence undermines Respondent's credibility. As does the lengthy video of the child interacting happily with her father at his home weeks before Respondent brought the child to the United States. The mere fact that Dr. Borelli thinks

that the child will suffer a grave risk of psychological harm if returned does not automatically imbue that opinion with dispositive weight, nor does it erase the vast amount of conflicting evidence. Petitioner puts it well: "Where the asserted risk arises from re-exposure to a parent's alleged abusive conduct, the reliability of the abuse allegations is directly material to whether the feared harm is 'grave' and real rather than speculative." (Doc. 52 at 7). Ultimately, the Court found that Respondent failed to meet her burden to show a grave risk of harm to the child if returned. That conclusion remains rooted in the record, following a careful review of the evidence presented and the parties' arguments.

One more point. Although Respondent attempts to argue that she is likely to succeed on the merits, what she really does is disagree with the Court's conclusion and identify an issue for appeal. Of course, it is her right to appeal. But she has not shown a likelihood of success on the merits. Thus, this factor does not support a stay.

*Irreparable Harm*

Respondent argues that the irreparable harm here is the psychological harm to E.P. identified by the only psychologist who evaluated her present condition for purposes of this proceeding. (Doc. 51 at 7). But harm to the child is not the irreparable harm standard. Rather, courts evaluate irreparable injury to the movant. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.

1986) ("absent a stay the movant will suffer irreparable damage"). Here, Respondent conflates the risk of irreparable injury to herself with the risk to the child. Absent a showing that Respondent will be irreparably injured without a stay, she has not established the second factor. *See Kiroska-Hartman v. Hartman*, No. 8:23-CV-2974-MSS-CPT, 2024 WL 982517, at *3 (M.D. Fla. Feb. 9, 2024).

Respondent is again attempting to relitigate the final evidentiary hearing, rather than demonstrate that *she* will suffer irreparable harm if the Court does not stay E.P.'s return to Lithuania during the pendency of Respondent's appeal. *See Silva v. Ferriera dos Santos*, No. 1:22-CV-03371-ELR, 2023 WL 6193011, at *2 (N.D. Ga. Apr. 4, 2023) (finding respondent merely attempted to relitigate the merits of the case and failed to show irreparable harm to herself). Respondent does not offer evidence or argue that E.P. could not be returned to her in the United States if she succeeds on appeal or that her appeal or any relief to which she may be entitled would be compromised absent a stay of the present proceedings. *See id.* Yet again, Petitioner frames the issue well, stating that "the psychological harm that Respondent now recasts as 'irreparable injury' is the very harm the Court already found she failed to prove by clear and convincing evidence." (Doc. 52 at 3). True.

As explained above, an appeal is not rendered moot when a child is

returned. "Otherwise, stays pending appeal of Hague Convention return orders would be commonplace but instead they are heavily disfavored." *Silva*, 2023 WL 6193011, at *2 (internal quotation marks and citations omitted). Accordingly, the Court finds that this factor does not favor a stay.

*Injury to Petitioner*

Respondent argues that a stay will not substantially injure Petitioner. (Doc. 51 at 9). She offers to facilitate regular phone and video contact between father and child and expedite appellate briefing. Even accepting these arrangements for the sake of argument, the injury to Petitioner is apparent. *See Friedrich*, 78 F.3d at 1068 ("Under the logic of the [Hague] Convention, it is the *abduction* that causes the pangs of subsequent return." (emphasis in original)). As the Court has found, Respondent wrongfully removed E.P. to the United States in violation of Petitioner's rights and that the Hague Convention compels return of the child to Lithuania. Moreover, the child has been separated from her father for an entire year. If the Court granted a stay, it would further stall the child's readjustment to life in Lithuania. This factor also weighs against a stay.

*Public Interest*

Lastly, the public interest factor weighs in favor of returning the child to Lithuania and not staying the order pending appeal. Ensuring prompt return of a wrongfully removed child to her country of residence is one of the primary

purposes of the Hague Convention. *See Chafin*, 568 U.S. at 169 ("courts can and should take steps to decide [Hague Convention] cases as expeditiously as possible"). Respondent wrongfully removed E.P. to the United States a year ago, and Petitioner filed his Petition approximately four months ago. (Doc. 1). "In light of the Hague Convention's goal of expediency, the fact that this case has been pending for so long weighs against granting Respondent's requested stay." *Silva*, 2023 WL 6193011, at *3.

***

Alternatively, Respondent requests an administrative stay to permit her to seek relief from the Eleventh Circuit. (Doc. 51 at 11). Upon due consideration, the Court denies this request. Respondent is free to seek prompt relief from the Eleventh Circuit.

Accordingly, it is hereby **ORDERED**:

Respondent's Second Amended Emergency Motion to Stay Order of Return Pending Appeal or Alternatively, for Temporary Administrative Stay (Doc. 51) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on August 12, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies to: All Parties of Record